Number 171749 Clifford A. Zucker v. Rolando Rodriguez et al. So counsel, you were all treated to an extensive class on the UCC. And now we're switching topics. Thank you, Your Honor. Good morning, Your Honors. I'm Alfred Lurie, the firm of Kilpatrick Townsend in Stockton, appearing here today on behalf of the plan administrator, Clifford Zucker. May it please the court. In this case, the district court strictly applied the separate injury test to dismiss the plan administrator. Mr. Lurie, can I rearrange your argument a little bit? The FDIC makes a very interesting alternative argument based on Judge Hamilton's concurring opinion in that Seventh Circuit case. It would help me if you would first deal with that the rights of the holding company as the shareholders of the bank with respect limited to the injuries to the bank. If you could start there, and then if you want, work your way back to Delaware law about breach of judiciary duty and whether it actually is a doctrine that bars the FDIC. I will, yes. The FIRA provides that the FDIC as receiver succeeds to the rights, titles, powers, and privileges of the insured depository institution and the stockholders and directors and officers of the insured financial institutions. So a judicial gloss has been accepted by most circuits that draws a distinction between direct actions and derivative actions, but as Judge Hamilton says, that's not a necessary construction of the statute. Do we agree on that much? Yes, Your Honor. I think the opinion from the court and the Vin V. Miller pointed out that no federal court had ever read FIRA as vesting in the FDIC direct claims. Excuse me, you didn't answer my question. I agree with that. The question was one of statutory interpretation. Do you agree that the statute itself does not embody this, the text of the statute itself does not embody this direct derivative distinction? Yes, Your Honor. It was necessary to include the language with respect to the institution because shareholders and officers and directors have certain powers. They have voting powers, they have powers, directors have rights of approval with respect to the institution. Okay, so why can't the statute be read to refer to direct actions with respect to injuries suffered by the bank? Because... I know Judge Easterbrook thinks that that's not a good reading of the statute, but there's a debate in Levin, or is it Levin, I don't know, the Seventh Circuit opinion about this. Well, Your Honor, if the statute were read in that way, it would mean that shareholders asserting stockholder securities fraud claims against officers and directors of the bank would be divested of those claims. Why were those claims with respect to injuries to the bank? Well, they would be with respect to the institution, Your Honor. Just looking at the language, the language doesn't say with respect to injuries. The language says with respect to the institution or the assets of the institution. Okay, okay. And in this situation, a direct claim of a stockholder is not an asset of the institution, it's an asset of the stockholder. And as Judge Easterbrook pointed out, if you read the statute, as vesting in the FDIC assets of a stockholder... No, no, no. That's not actually our question. Our question is vesting a cause of action as opposed to directly vesting the assets. So let's assume you can vest a cause of action. Although Easterbrook doesn't say this, he posits that there might be a takings problem if you did that. Do you agree with him that there would be a takings action? There would be a takings problem if what was being vested was a cause of action. But Your Honor, it's illogical to think about vesting a cause of action in the FDIC that the FDIC could never bring because... Oh no, what I'm positing is FIREA can be read to allow the FDIC to bring this action. You don't get out of my question with that answer. Well, isn't FIREA meant to preserve any and all claims so that when the FDIC steps in, it's got everything that the bank had? It isn't to add on to that and let the FIREA, let the FDIC go roaming through the neighborhood and look for other claims that other people might have merely because they're stockholders if they involve no breach of duty to the bank. Right. The FD is vested with everything that the bank has. And the bank does not own the claim of a stockholder, does not own the claim of a corporation against a fiduciary of the parent corporation for breaching his fiduciary duties to the parent corporation. And if the statute... Even if it caused injury to the bank? Your answer has to be yes, even if it caused injury to the bank. That's correct. Even if a parent's director's or officer's action caused injury to a subsidiary, the subsidiary would not have a cause of action against the parent's officers and directors because they only owe fiduciary duties to the parent. Okay. I have one more question then Judge Stahl. Here we have a holding company, 90% of its assets are the bank subsidiary. Then just before the bank tanks, the real estate company is given to the bank with its loans and its debts. And there is a consolidated financial statement. And I assume the holding company is the one who decided that there was going to be a consolidated financial statement. I assume that includes the financial statement for the bank. Is that what the term consolidated financial statement means? I'm sorry, Your Honor. I missed that. Okay. There are some facts about this case that make it unusual. One of them is that the holding, over 90% of the assets of the holding company are the bank. Correct? Yes, Your Honor. To the extent there was any argument that, well, gee, there were still some assets in the real estate lending company. From my point of view, that argument is gone because that got merged into the bank before the bank tanked. All right. So at this point, what the holding company holds is the bank. Okay? Part of the claim being made here is that there was a failure to timely restate the financial statements. I understood those to be consolidated financial statements. Yes, Your Honor. Okay. For the bank and the holding company together? Yes. They were consolidated financial statements of the bank and the holding company, but the responsibility for those financial statements was the responsibility of the CEO and CFO of the holding company, the publicly filing entity. And under federal law, under Sarbanes-Oxley, those responsibilities are responsibilities of the CEO of the holding company and the CFO of the holding company at the parent holding company level. That's very interesting to me. I assume most banks have holding companies. Don't most banks have holding companies? No. I think that's probably fair to say. Okay. And under Sarbanes-Oxley, then, it is the two officers of the holding company that have the responsibility for the financial statements of the subsidiary bank. Are there officers of the bank who have responsibilities? No. You just told me that it was the holding company officers and directors who have the responsibility as a matter of law to file the financial statements of the entity. Right. Okay. So now I'm back to the... And suppose in the course of their doing this, as is alleged in the FDIC complaint and in your complaint, they cause harm to the bank. So my bottom line question is, how would it contravene congressional intent to extend FIREA to let the FDIC pursue those claims of injury against the bank in this situation against the officers of the holding company? Well, I don't think there's anything in federal banking law that creates... I don't think there's anything in Section 1821D that creates a cause of action in the FDIC for a breach of fiduciary duties by the officers of the holding company. The reasoning I'm suggesting to you bypasses entirely that question under Puerto Rico's Delaware law about breach of fiduciary duty, the non-existence of a fiduciary duty normally from directors of a holding company to the shareholders of the bank. It just bypasses the question, unless you tell me it doesn't bypass the question. Oh, Your Honor, if Section 1821D2A of Romanet 1 were interpreted as attempting to vest in the FDIC direct claims of the holding company, it would raise constitutional issues under the taking clause of the Fifth Amendment because it would be a taking of private property for public use without just compensation. Yeah, you see, that's not so clear to me that it would create any takings problems. I assume you're arguing whether it does or doesn't, we are compelled to avoid interpretations that could raise constitutional issues. Yes, Your Honor. Okay. Yes, Your Honor. Now, Judge Stahl has been waiting patiently. No, I think you hit what I was going to ask about. Well, holding companies, it's a very common structure in corporate America to have a holding company or a parent company with subsidiaries. A holding company is? Sure. It's a common structure. And consolidated returns are a common creature in the world of corporate America, that the parent files consolidated reports and sometimes often consolidated tax returns. Yes, yes, right. The financial statement is an audited, consolidated financial statement that is, you know, from the bottom up to the holding company for the holding company and all of its subsidiaries. Does your argument make a difference if the holding company's directors are different from the directors of the bank or if they are both? In some of these cases, they're both. I don't recall what the situation here is. No, we would not make a different argument if they were not overlapping directors and officers. So you, so. I'm sorry, does the record establish whether there were overlapping directors and officers? I don't believe that the record establishes that, Your Honor. I will say that in the action filed by the FDIC, the FDIC sued two of the defendants in the plan administrator's case in their capacities as directors and or officers of the bank. And of the holding company? No, they didn't sue it. And they're the same individuals? Yes and no, as officers of the holding company, three of the defendants in our case are not defendants in the FDIC action. And I don't know whether they also constituted officers of the bank. OK, so there is some overlap if you put the two actions together, but not complete overlap. That's correct. There's some overlap, but not complete overlap. With respect to someone who is on both boards, in other words, if you have a director who is a director of the parent, and that same person is also a director of the subsidiary bank, then certainly FIREA could sue and would own, or rather the FDIC could sue and would own any claim against the person who is a director of the bank for any breach of any bank by the director. Absolutely. Absolutely, Your Honor. And so if your claim overlaps in that respect as well, then the FDIC should be able to stop that. Yes, but we don't believe that the claim overlaps, Your Honor, because the claim is based on delayed financial reporting at the holding company level. It's not based on mismanagement of the bank or failure of oversight of the bank. Yeah, I thank you for the amendment you made earlier. It's a sort of concession that FDIC does own certain claims, and I think it was quite admirable of you to do that. But one of my questions is, so what's qualitatively different about those claims that you say the FDIC does have and the failure to restate the financial statements, which is at issue here? Why should I think about them differently? Well, I think the difference, Your Honor, is that the plan administrator can sustain his claim without showing that the subsidiary, that the bank has a cognizable claim against anyone. And therefore, I don't think that the claims are related, and the plan administrator can sustain his claim completely independently of whether or not the bank has a claim against anyone for the loss that underlies the holding company's claim, the plan administrator's claim. Well, the value of the holding company is basically made up of the value of the bank. And the public has now had to come in and spend millions of dollars to bail out the bank or the holding company. Why shouldn't the FDIC have the ability to access all of the assets available to repay the public for what the public has paid in order to satisfy the requirements that the FDIC has to satisfy? Your Honor, it's true that the federal deposit insurance is backed by the full faith and authority of the United States, but as a matter of practice, the deposit insurance fund is funded by premiums that are paid by the banks. But ultimately, the ultimate obligation is to the taxpayer of the United States. And so why should it, you argue about taking, but why should that be that this is somehow taking when the money is being used to repay the public for what the public has just laid out in excess of the insurance, which is usually the case? Well, Your Honor, if you apply that rule, you would apply it to shareholders of a bank who are suing officers and directors of a bank for stock fraud. And that's just, I just don't believe that that is the proper interpretation of what Congress intended in passing FIREA. Okay, I have a couple more questions and thank you. Your answers have been very helpful as we think about this. Um, I take it you don't claim that the holding company suffered an injury wholly independent of the injury to the bank. You are not making that argument. No, Your Honor, we believe that strict, strict application of the separate injury test and a two-tiered scenario is not warranted. But as a matter of fact, you're not claiming that there was in fact injury to the holding company and then your subsidiary argument is, and that's the wrong test anyway. No, Your Honor, it's kind of a last clear chance situation. The breach of fiduciary duty at the holding company level deprived the holding company of the ability to avoid the consequences of the injuries that befell the bank. So the holding company was basically deprived of the ability to mitigate those injuries. But the injury, the injury is not a separate injury from the failure of the banks. Okay. Thank you. That's been very helpful. Judge Keoda. Thank you, Your Honor. Thank you. So Mr. Brooks, I'd ask you to take your guidance from the questions we have asked and the topic we're obviously interested in. Sure, Your Honor. I guess, first, let me be polite and introduce myself. I'm Joseph Brooks from the FDIC's Appellate Litigation Unit. Good morning, Your Honors. Your Honors, this case presents a textbook example of what Congress sought to prevent by enacting Section 1821 D-2A. We have a competing case by a shareholder of a failed bank that admittedly seeks to recover nothing but injury to the bank at the same time that there is a pending FDIC action which seeks precisely the same injuries. If Congress intended anything by Section 1821 D-2A, it intended that that not happen. How about the day before the FDIC took over as receiver? Did the bank have any claim of any type for any breach of duty against the directors of the parent company in their capacity as directors of the parent company? We believe the answer to that question is yes, Your Honor, because as we point out in our brief, the plaintiff's own allegations provide, if not firm factual evidence, certainly a very strong inference that the bank and the holding company were both insolvent for some extended period of time. I mean, we're talking about a $1.2 billion loss here. That shouldn't happen overnight. So you're saying then that there's a duty, to say that there's a duty Delaware law controls, I don't see anything in Delaware law that says that the directors of a parent owe any duty at all to the subsidiary except to creditors in a non, well, in a non-wholly owned subsidiary or an insolvency proceeding or to minority shareholders. But we don't have either here. Your Honor, I would quote most prominently from N. Ray Maxis, a bankers of Delaware court. I know it's not the Supreme Court of Delaware, but the Supreme Court of Delaware hasn't spoken to this. But here would be the rationale, Your Honor. If it's in fact... No, I want to step back. From my point of view, your argument in response to Judge Kayada's questions about that, as opposed to what FIWEA intends for FDIC to be able to do. Your, the argument the district court relied on. Delaware law, thus far, I don't see any case which says, well, there's an exception to our general rule that no fiduciary duty is owed to a subsidiary. When the parties are insolvent, when there are allegations of bad faith, when there may be allegations of fraud or the secular lie of fraud, I don't see a Delaware case that says that. I do see that most of these, there is no breach of fiduciary duty claim cases come up in the business judgment setting and those decisions make perfect sense in that setting. It would seem to me that the FDIC is urging us to make for Puerto Rico new law based on an assumption about how Delaware law is going to develop. I've read that bankruptcy court opinion. I think it stretches a bit. We have the choice of making new law under that theory if we were to sustain your position or on your alternate argument, maybe we'd be making new law if we adopted that alternate argument, but it would at least be an interpretation of a federal statute. That's why I started the dialogue by asking about the alternative argument. Your Honor, I don't believe you even have to reach the fiduciary duty issue and here's why. As you know from the briefs, we primarily rely on the four federal court decisions by the 10th, the 7th, the 4th, and the 11th circuits, each one of which presents precisely the same scenario we have here. In fact, the Barnes case out of the 10th circuit is like, as a part of mine likes to say, on all fives. So the question becomes, is Delaware law different? You can search both briefs that were filed in this case by an administrator and you can search all the plaintiffs. I'm going to stop you. I thought the point of Judge Hamilton's concurrence was, you know, we really don't have to resolve this state law issue of direct versus derivative claims because in certain limited circumstances, FDIC can take the direct claims of the holding company. That's what I thought Judge Hamilton was saying. Judge Easterbrook responds, well, no, actually that's not the way most federal courts look at it and in any event, there would be a takings issue. Judge Hamilton thinks that there's not really a takings issue and that this is a matter of congressional intent. Your answer to me just required, just involved a continuation of the direct and derivative analysis. I had thought that was not the argument you were making in your brief. No, Your Honor. Let me try to clarify. The point I was trying to make is that while each one of those federal circuit cases is not materially distinguishable from this case in any way and nobody has ever contended, and I don't believe, that the statewide issue in those cases is any different from Delaware law, those courts did not find it necessary to even reach this fiduciary duty issue and here's why. That's also Delaware law. As I understand the Plaintiff Administrator's argument, he's saying, look, all well and good when you have a so-called single tier scenario, all well and good, but when you have a two tier scenario, the independent injury test of Tooley doesn't apply. And the only Delaware case that they can find that they rely on is the case financial case. But Your Honor, case financial did exactly what each one of the federal courts did. Look, I can agree that the four circuit court opinions reach a conclusion that is consistent with the conclusion that you are asking us to reach here. What I don't understand is, and I didn't understand this from your brief, why Delaware law is pertinent to the question of the scope of FIREA. Well, Your Honor, we don't believe it is. All right. Our position is this. That's a different argument. But let me, if I could provide a little context. From the time that I first got involved in this case, I tried to understand. I went back and I talked to people. I read the case. I tried to understand why this direct derivative law was ever even introduced here. Because like Your Honor, I read 1821 D2AI and it's just not there. And so I don't know the answer to that. But here's what I do know. We believe, for the reasons we've argued in our brief, that the Plaintiff Administrator's claim here is a derivative claim. But we further believe that if it's not, this nevertheless is precisely the type of claim of a shareholder that Congress intended should go to the FDIC. The language is clear. There's your takings problem. I don't believe there's a takings problem, Your Honor, because first of all, as Judge Easterbrook pointed out, if both the FDIC and the Plaintiff Administrator recovered on their claims in these two separate lawsuits, you'd have double counting. You'd pay twice. And that's not permitted by the law. Well, that's only if it's a derivative claim. But I think, as I understand Judge Lynch's questions, she's trying to get you to move to the scenario where let's assume there is no duty under Delaware law, but can you still prevail under the statute itself, the grant to the FDIC of certain claims of stockholders? That is premised on there not being a duty, which goes back to the question I asked in the beginning, which is the day before the receiver came in, could the bank have sued the stockholder? And if there's no duty, then the answer is no. If the statute is then to be read to say that once the receiver is appointed, that claim is nevertheless transferred from the shareholder to the corporation, even though there was no duty, that, it seems to me, to be a taking of a claim that on day one, the shareholder and only the shareholder had, and now on day two, the FDIC and only the FDIC has. Well, Your Honor, I think that depends on what you mean by claim. There is no dispute. We heard it admitted again. It's admitted in the briefs. Both parties here, the FDIC and the plan administrator, are trying to recover the exact same money, injury to the bank. There's no dispute about that. That's why there's double counting, whether it's direct or derivative or not. Sure, that's just because the bank is an asset of the holding company. No, it's just because the plan administrator has come up with a clever way to try to plead around the limitation on being able to recover injury to the bank. If Congress intended anything, it intended all assets of the bank and whatever the bank had to be available to satisfy the deposit insurance funds and satisfy creditors, what have you. It certainly did not intend that the holding company, which created this mess, could come tap into insurance policies and perhaps more to take money away from the FDIC's ability to resolve this. Let me ask you this. Let me give you an example. Meeting with the board of the holding company. Sure. The report says the bank has great prospects and we could develop it. The holding company, though, says, I see the mission of this holding company is going in a different direction and they vote to shut down the bank and liquidate it. All right. And someone says, well, that will hurt the bank. And someone says, I don't give a hoot. I think our company should be out of the banking business. Liquidate it. Under the argument you are making, if the FDIC stepped in the next day, they could sue the directors of the holding company for that decision, which would then impose on them a duty when they're thinking they would impose on them a duty to the bank. And I don't see where you're getting that at all. Well, Your Honor, again, we're operating in two realms here. Realm number one is where we're talking about whether this satisfies the direct derivative, whether the court agrees or not. Our position is that the bank would have had a claim based on assignment. So if you put that aside. If you put that aside, then the answer is no. The bank would not have had a claim the day before. But the FDIC would have a claim because, again, all rights, all titles, all powers, all privileges of any stockholder with respect to the institution and the assets of the institution. So the key is how we read that prepositional phrase. If you do not agree that these are derivative claims, then that is the key. So both of you treated this argument, which has occupied us this morning, as secondary, understandably so, given the way the district court handled it. But I'm going to exercise my prerogative to require each of you to simultaneously file with us further briefing within two weeks. Two weeks. I'll give you two weeks. And you must, in that briefing, address to this alternate argument, address the takings issue as well as the statutory interpretation issues that are raised. And I have a further question for the FDIC, which, if you can't answer it today, you will answer in that filing. Judge Hamilton says in his concurrence, look, FDIC didn't argue this alternative position I'm laying out to us. If the FDIC were to change its result, its approach to this, okay. I'm not sure if Judge Hamilton meant in briefs to appellate courts or what. So I took a look at whether FDIC has promulgated any regulations in furtherance of this alternative interpretation. I didn't find any. Maybe there's something, but we didn't find it. So then we come back to, okay, is this the very first case where FDIC has ever seriously presented this alternative argument, having made it before? I understand that you didn't make it to the district court, but at the time, that was, what, four years ago, five years ago? At the time, the law hadn't developed. But if we're the first case, why are we the first case? Has the FDIC ever taken this position before? This is the first case, Your Honor, in which it would have made a difference, that I'm aware of. That you're aware of? Yes, for example, even in the Levin case, in which Judge Hamilton wrote the concurrence, the FDIC was not maintaining that there were any claims it should have had that the Seventh Circuit did not recognize. This is the first case that I'm aware of. So I would assume FDIC is going to argue some deference should be given to our view of the statute, but you didn't do it through notice and comment rulemaking. This is the first time you've advanced this theory to an appellate court, so I think you better address the question of whether there's any deference of any sort that we should pay to you. Excuse me. Your Honor, is the court putting any limitations on the page numbers for these supplemental filings? I couldn't hear you. Are we having any specific page limitations on these supplemental filings? Thirty. Thirty pages. No more than thirty pages. Fourteen days is your page limit. Your Honor, if I could make one final point. Says the most recent of us to have been in private practice. I don't know. I'm not in private practice anymore either, but Your Honor, if I could just make one final point. You're not affected by the government shutdown, right? Because you're FDIC. That's correct, Your Honor. We are not the beneficiaries of federal appropriations. We are totally funded as my brother had indicated. So you have no problems complying in 14 days? We should not, Your Honor. I just don't know whether the court will be open based on what I've seen on the website. We'll be open. Okay, Your Honor. Your Honor, if I could make one final point unrelated to the argument we've just been talking about, and it would be this. I would again hearken back to the four federal appellate decisions that we chiefly rely on in this case, and I would point out that if this court were to decide that this is a derivative, excuse me, this is a direct claim of the holding company that does not belong to the FDIC, that would create a circuit split. But more importantly, the case, financial case, which is relied upon chiefly by my brother as Delaware authority, does not, as they suggest, create an exception to the independent injury rule based on the so-called two-tier scenario. And here's why. Yes, but you have to understand what I'm proposing is avoidance of the question, not creating a circuit split. I understand that, Your Honor. But if we are unable to avoid it on that case. So you're asking, please avoid it if you think you're going to rule against me on the direct derivative? Essentially, Your Honor, our argument proceeded in three steps. Step number one, Delaware law, the plan administrator's claim here is a derivative claim. Step number two, under four federal appellate decisions involving this precise scenario, holding companies, banks, FDIC receivership, claims against officers and directors of the holding company, uniformly everyone held it was a derivative claim that belonged to the FDIC. And then alternatively, if those first two arguments don't work, our third and final alternative argument is the one that we've been pursuing here today. And the one that both of you are going to file simultaneous briefs. Correct, Your Honor. And then we'll see if we need any reply briefs. But if I could just make one final point about a case that's in the briefs, but the point was not specifically made in the briefs. And that is that the case financial case is entirely consistent with the four federal I would refer the court to this specific language from the case. The first question is thus, whether case financial, the parent, suffered a direct injury as a result of Alden's, the parent level officer, alleged misconduct, or whether it only sustained the alleged injury by virtue of its ownership in a company that was itself injured directly. Close quote. That's a 2009 Westlaw 258-1873 at Star 5. And it cites Thule. In other words, case financial, the only case that they say shows that Delaware law is different, actually applies the Thule independent injury test and says, the first question is, is it independent injury? And if it's not, do not pass go, do not collect $100, you're done. Then it is necessarily under Delaware law, according to case financial, a degravative claim. So I just wanted to make that point, Your Honor. I appreciate the issue you want us to address and we'll certainly enjoy the opportunity to do that. Thank you both. We look forward to receiving your filings. Thank you very much, Your Honor. And I believe that's it for our oral arguments today. So the court will stand and recess. All rise.